UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cr-87-RJC-DCK-1

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) |
| | ) **ORDER** |
| TIMOTHY HERRON, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's pro se Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 59].[1]

## I. BACKGROUND

Defendant was charged with: possession with intent to distribute a controlled substance, i.e., a detectable amount of heroin and 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and (b)(1)(B) (Count One); possession of a firearm in furtherance of the drug trafficking offense charged in Count One in violation of 18 U.S.C. § 924(c) (Count Two); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count Three). [Doc. 11]. The Indictment also charged, pursuant to 21 U.S.C. §§ 841 and 851, that the Defendant had a prior conviction for a drug felony, i.e., North Carolina possession with intent to deliver a schedule II controlled substance, 17CRS034605. [Id.].

---

[1] The Defendant filed two Motions to Vacate in this case three days apart. [Docs. 59, 60]. The first-docketed Motion to Vacate [Doc. 59] was executed before the second-docketed Motion to Vacate [Doc. 60], and it is thus treated as the operative superseding Amended Motion to Vacate. [See Doc. 62 at 1]. The original Motion to Vacate [Doc. 60] has been superseded and will be terminated.

1

Approximately two months after the Indictment was filed, the Defendant moved for inquiry of appointed counsel. [Doc. 19]. The Defendant complained *inter alia* that: he had difficulty communicating with counsel and did not trust him; counsel had presented Defendant with two versions of the Plea Agreement, neither of which included a drug amount; counsel indicated that the Plea Agreement and Factual Basis did not have to include a drug amount and that the Government was relying on information from an informant to establish quantity; counsel estimated that Defendant would receive between 180 and 235 months' imprisonment, even though a PSR had not yet been completed; counsel sent Defendant an email from the prosecutor indicating that the "other information" about drug amount would not be used against him if he pleaded guilty to Counts One and Three; and Defendant was led to believe that he was pleading guilty to a drug amount of 28 grams. On May 25, 2021, the Motion came before a magistrate judge, who allowed counsel to withdraw and appointed a new lawyer to represent the Defendant. [May 25, 2021 Oral Order].

On July 9, 2021, the Defendant pleaded guilty to Count One in exchange for the Government's dismissal of Counts Two and Three. [Doc. 21 at ¶ 1 (Plea Agreement)]. He admitted that he is, in fact, guilty as charged in Count One. [Id.]. The Plea Agreement states that the offense charged in Count One is generally is punishable by no more than 20 years' imprisonment, and/or a $1,000,000 fine, and at least three years of supervised release, unless he was previously convicted of a felony drug offense. However:

> In this case, the Government has filed an Information regarding one or more prior felony drug convictions pursuant to 21 U.S.C. 851. The Defendant stipulates, agrees, and affirms that the Information is accurate and valid for purposes of 21 U.S.C. 851, and that the Defendant has no challenge to the same. thus, the Defendant is facing a statutory sentence of not more than thirty (30) years imprisonment and six (6) years of supervised release.

2

[Id. at ¶ 5].

The parties agreed that: the Defendant's plea is timely for the purpose of acceptance of responsibility; the parties may advocate the drug amounts and base offense level, whether Defendant should receive a 2-level weapon enhancement, whether the Defendant is eligible for the "safety valve;" the career offender or armed career criminal enhancements may be used in determining the sentence, if applicable; the parties may argue their respective positions regarding the base offense level, other specific offense characteristics, cross-references, special instructions, reductions, enhancements, and adjustments, as well as departures or variances from the applicable guideline range; and the Government will not oppose a sentence at the bottom end of the applicable guideline range. [Id. at ¶ 8].

The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Defendant would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 7].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Defendant read and understood the written Factual Basis that was filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 11]. The Plea Agreement further provides that the Factual Basis does not necessarily represent all of the conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with

3

additional relevant facts prior to or at sentencing. [Id. at ¶ 12].

The Plea Agreement sets forth the rights Defendant was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not be compelled to incriminate himself. [Id. at ¶¶ 13-15]. The Plea Agreement acknowledges that Defendant had discussed with defense counsel his post-conviction and appellate rights, and he expressly waived those rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 16-17]. The waiver expressly "precludes the defendant from challenging his conviction or sentence on the basis of any other claim, including but not limited to any claim that the statute(s) to which the defendant is pleading guilty is or are unconstitutional and any claim that the admitted conduct does not fall within the scope of the statute(s). [Id. at ¶ 17]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 23].

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> On or about January 7, 2021, in Mecklenburg County, within the Western District of North Carolina …. The Defendant, TIMOTHY HERRON, did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, and a mixture and substance containing a detectable amount of cocaine base, commonly called "crack cocaine," a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). (Count One in the Bill of Indictment)
>
> Before defendant TIMOTHY HERRON committed the offense charged in Count One, he had prior convictions for drug felonies in Mecklenburg County, North Carolina, namely, a conviction for Possession with Intent to Sell/Deliver

Schedule II Controlled Substance on September 11, 2018 in Docket Number 17CRS034605; PWITS Schedule VI Controlled Substance on August 5, 1994 in Docket Number 94CRS043335; and Possession of Schedule II Controlled Substance on 9/14/1993 in Docket Number 93CRS041873.

[Doc. 20 at 1-2] (paragraph numbers omitted).

On July 9, 2021, a Rule 11 hearing came before a United States Magistrate Judge. See [Doc. 55 (Plea Hearing Transcript)]. The Defendant stated under oath that he received a copy of the Indictment, discussed it with counsel, and understood the charge to which he was pleading guilty and his sentencing exposure, including the maximum applicable sentence pursuant to the § 851 Notice. [Id. at 2-4]. He stipulated that the information regarding his prior felony drug convictions pursuant to § 851 was accurate and that he would not challenge it, and consequently, he faced a statutory sentence of not more than 30 years' imprisonment and six years of supervised release. [Id. at 4]. Defendant agreed that: he understood that pleading guilty may cause him to be deprived of certain civil rights; he discussed with counsel how the sentencing guidelines may apply to his case; the Court would not be able to determine the sentence until a PSR has been prepared and Defendant has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he would have no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 4-5]. Defendant acknowledged the rights he was waiving by pleading guilty. [Id. at 4-6].

The Plea Agreement was summarized in open court. [Id. at 6-10]. Defendant confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id. at 10]. Defendant stated that he read the Factual Basis, understood it, and agreed with it. [Id. at 11]. He admitted that he is guilty as charged in Count One, [Id. at 6]. Defendant stated that nobody threatened, intimidated, or forced him to plead guilty, and

5

that nobody made any promises of leniency or a light sentence to induce him to plead guilty. [Id. at 11]. Defendant agreed that he had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services. [Id.].

The Revised Presentence Investigation Report (PSR) scored the base offense level as 34 pursuant to U.S. Guidelines § 2D1.1(a)(5) because the converted total drug weight was 15,206.92 kilograms. [Doc. 42 at ¶ 26]. Two-level enhancements were added because the Defendant possessed one or more firearms pursuant to § 2D1.1(b)(1), and because the Defendant maintained a premises for the purpose of distributing a controlled substance pursuant to § 2D1.1(b)(12). [Id. at ¶¶ 27-28]. This resulted in an offense level of 38. [Id. at 32]. The Defendant is a career offender because he was at least 18 years old at the time of the offense of conviction, the instant offense is a felony crime of violence or controlled substance offense, and he has at least two prior felony convictions for a crime of violence or a controlled substance offense (robbery with a dangerous weapon, 99CRS26620, 99CRS26621, 99CRS26622; and possession with intent to sell and deliver cocaine, 17CRS034605). [Id. at ¶ 33]. However, the career offender enhancement did not change the otherwise-applicable offense level. [Id.]. Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 35. [Id. at ¶¶ 34-36]. The Defendant had 9 criminal history points and a criminal history category of IV, however, the criminal history category for career offenders is VI. [Id. at ¶¶ 51-52]. This resulted in an advisory guideline range was 292 to 365 months' imprisonment, however, this exceeds the statutory maximum of 30 years' imprisonment, so the advisory guideline range was 292 to 360 months' imprisonment. [Id. at ¶ 97]. The PSR notes that, absent the Plea Agreement, the Defendant would be facing a consecutive five-year sentence for Count Two. [Id. at ¶ 98].

At the sentencing hearing, the Defendant stated that he had read the PSR, he understood it,

6

and he had enough time to review it with counsel. [Doc. 56 at 3]. Defense counsel objected to the PSR's two-level enhancements for weapons and for maintaining a premises for the purpose of controlled substances, and to the amount of drugs that was attributed to the Defendant that increased the base offense level to 34. [Id. at 4]. With regards to drug amount, counsel noted an email that the prosecutor had sent during plea negotiations agreeing not to use a confidential informant and the Defendant's cell phone as evidence. [Id. at 16-17; see id. at 25 (Defendant referring to the email)]. The Court overruled the objections to the firearm and premises enhancements. [Id. at 9-10]. The Court granted in part the Defendant's drug weight objection, and found that the offense level should be 32, based on a converted drug amount of between three and 10 kilograms of marijuana. [Id. at 21-22]. This resulted in a total offense level of 33 and an advisory guideline range of 235 to 293 months' imprisonment. [Id. at 22-23]. The parties requested that the Court sentence the Defendant at the low end of the guidelines, pursuant to the Plea Agreement. [See id. at 29]. The Court accepted the parties' recommendation and sentenced the Defendant to 235 months' imprisonment followed by six years of supervised release. [Id. at 30-31]. The Judgment was entered on September 21, 2022. [Doc. 44].

On direct appeal, the Defendant argued that the Court procedurally erred by applying the two-level enhancements for possession of a gun, and for maintaining a premises for the purpose of selling illegal drugs. On March 29, 2023, the Fourth Circuit dismissed the appeal because the Defendant's claim fell squarely within the scope of his knowing and voluntary appellate waiver, Case No. 22-4551. [See Doc. 57]. The Defendant did not seek certiorari review.

The Defendant initiated the instant § 2255 proceeding on March 6, 2024.[2] [See Docs. 60,

---

[2] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

62]. In the operative Amended Motion to Vacate, he argues that counsel was ineffective (restated and renumbered): (1) prior to the guilty plea; (2) with regards to the guilty plea; (3) at sentencing; and (4) for failing to file a Notice of Appeal. [Doc. 59]. He asks for his convictions and sentences to be overturned. [Id. at 12]. The Court ordered the United States to respond. [Doc. 62]. The United States argues that the Defendant's claims were waived by his voluntary guilty plea, are vague and conclusory, and/or lack merit. [Doc. 66]. The Defendant has not replied and the time to do so has expired. This matter is ripe for disposition.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the Defendant is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Defendant can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a defendant must first establish deficient performance

8

by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, a defendant "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the defendant fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

### A. Waiver

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to

contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

Here, the Defendant contends that counsel failed to: fully investigate the case; review the Indictment with him regarding the drug amount of 28 grams or more; "get information dismissed;"[3] suppress Defendant's "statement;" and object to a constructive amendment of the charges. [Doc. 59 at 4, 13-14].

These arguments are insufficient insofar as they are vague and conclusory. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court). Moreover, the Defendant stated at the Rule 11 hearing that he understood the charges, his sentencing exposure, and the rights he was relinquishing by pleading guilty including the appellate and post-conviction waivers. He further stated that he was pleading guilty because he was guilty of Count One, that he had fully discussed any possible defenses with counsel, that he was satisfied with counsel's services, and that the plea was not the product of threats, coercion, or promises other than the terms of the Plea Agreement. The foregoing complies with Rule 11 and demonstrates that Defendant's guilty plea was freely and voluntarily entered with a full understanding of its nature and consequences. See Fed. R. Crim. P. 11(b)(1)-(3); United States v. DeFusco, 949 F.2d 114, 116

---

[3] It is unclear whether this refers to the Indictment, or to the § 851 Information.

(4th Cir. 1991). Defendant's claims of pre-plea ineffective assistance were, therefore, waived by his knowing and voluntary guilty plea. These claims are dismissed and denied.

## B. Involuntary Plea

Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. To meet this requirement, a defendant must establish "both subjectively that he would have gone to trial and that it would have been objectively reasonable to do so." United States v. Santiago, 632 F. App'x 769, 773 (4th Cir. 2015) (emphasis in original) (citing United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012)).

The Defendant contends that counsel forced him to sign a "bad plea" with a "deadline date," failed to obtain an agreed drug amount, violated his Fifth Amendment rights, and led him to believe that he was pleading guilty to the drug amount that was charged in Count One. [Doc. 59 at 4-5, 13-14]. He contends that he was "prepared to take [his] case to trial…." [Id. at 16].

These arguments are rejected insofar as they are vague and conclusory. See Dyess, 730 F.3d at 359. Moreover, the Defendant's present self-serving contentions that he was forced or coerced to plead guilty are conclusively refuted by the record. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("[A]llegations in a § 2255 motion that

11

directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"). The record reflects that the Defendant entered his plea knowingly and voluntarily, and because it was in his best interest to do so. [See Doc. 59 at 16 ("I only agreed to sign because it was in my best interest")]. His present vague, conclusory, and unsupported contentions to the contrary are rejected.

Moreover, Defendant has failed to demonstrate prejudice because it would not have been objectively reasonable to proceed to trial in the circumstances of this case. The Plea Agreement was extremely favorable in that it led to the dismissal of two serious charges, including a § 924(c) violation which would have carried a consecutive sentence, led to a three-level reduction in the offense level for acceptance of responsibility, and resulted in the Government's agreement not to oppose a sentence at the bottom of the guideline range. There was strong evidence of Defendant's guilt as outlined in the Factual Basis and acknowledged by Defendant in open court. It would not have been objectively reasonable, under these circumstances, for the Defendant to have proceeded to trial. See generally United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) ("when the Government's case is strong," a § 2255 petitioner "faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial."); Fugit, 703 F.3d at 259 (finding that the decision to go to trial would not have been objectively reasonable where the evidence of petitioner's guilt was overwhelming). The Defendant's claims that counsel's ineffective assistance rendered the guilty plea involuntary are, therefore, dismissed and denied.

C. **Sentencing**

When an ineffective assistance claim relates to a sentencing issue, a petitioner must demonstrate a "reasonable probability that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (internal quotation omitted).

12

When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

The Defendant contends that counsel was ineffective for failing to: adequately communicate with him; provide him with a copy of the PSR and discuss it with him; object to the PSR's criminal history and offense level calculations including the gun and premises enhancements, drug quantity, and career offender enhancement; object to improper and insufficient evidence presented by the Government; present an email in which the prosecutor promised not to use information from an informant or from Defendant's phone; and argue that the § 851 enhancement does not apply.[4] [Doc. 59 at 4-5, 7-8, 13, 16].

The Defendant's contentions that counsel did not provide him with the PSR, review it with him, and answer his questions are conclusively refuted by the sentencing hearing transcript, and are rejected. [Doc. 56 at 3]; see generally Blackledge, 431 U.S. at 74. His arguments that the Government's evidence was insufficient and improper are rejected as vague and conclusory. See Dyess, 730 F.3d at 359. The Defendant's contention that counsel failed to object to the gun and premises enhancements is also refuted by the record insofar as counsel raised both of these arguments at sentencing. [Doc. 56 at 4-12]. The record also refutes Defendant's argument that counsel failed to challenge the drug amount and the base offense level. Counsel argued at sentencing that the amount of drugs attributed to the Defendant was excessive, and that the

---

[4] Had the Defendant attempted to raise these issues as claims of prosecutorial misconduct, they would be dismissed as procedurally defaulted from § 2255 review because the Defendant failed to raise them on direct appeal. See Bousley v. United States, 523 U.S. 614, 621–22 (1998). Alternatively, such claims would be denied on the merits because the Defendant has not identified any misconduct by the prosecutor that prejudicially affected his substantial rights. See generally United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002) (quotation omitted); United States v. Caro, 597 F.3d 608, 624–25 (4th Cir. 2010).

13

prosecutor should be prevented from relying on information gleaned from a confidential informant and from the Defendant's phone, pursuant to his pre-plea email discussing the same. [Id. at 12-13]. Counsel's argument that the drug amount was overstated was partially successful, resulting in a decreased offense level and a decrease in the advisory sentencing range from 292 to 360 months' imprisonment, to 235 to 293 months' imprisonment. [Doc. 42 at ¶ 97; Doc. 56 at 22-23]. The Court rejected counsel's email argument because the discussions about evidence gleaned from the confidential informant and from the Defendant's phone were not part of the final Plea Agreement, and therefore, were not binding on the Government. [Id. at 13-14; see Doc. 21]. The Defendant has failed to explain what more reasonable counsel could have argued with respect to these matters that had a reasonable probability of resulting in a lower sentence. See Dyess, 730 F.3d at 359.

As to the § 851 enhancement, the Defendant argues that counsel should have objected to the prior conviction resulted from an Alford[5] plea and involved a small amount of drugs rather than trafficking. The Defendant knowingly and voluntarily stipulated that the § 851 enhancement was correct and he agreed not to challenge the same as part of his Plea Agreement. [Doc. 21 at ¶ 5]. Counsel cannot be deemed deficient for failing to raise a matter that the Defendant affirmatively waived as part of his Plea Agreement. See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."). Moreover, it is irrelevant that the conviction resulted from an Alford plea; and his unsupported contention that the conviction involved a small amount of drugs, rather than a trafficking amount, is refuted by the record. See United States v. Mouzone, 687 F.3d 207, 221 (4th Cir. 2012) (holding prior conviction stemming from an Alford plea

---

[5] North Carolina v. Alford, 400 U.S. 25 (1970).

14

supported section 851 enhancement); [See Doc. 20 at 1-2 (admitting that the conviction in Case No. 17CRS034605 was for North Carolina possession with intent to sell/deliver a schedule II controlled substance); Doc. 42 at ¶ 50 (Defendant was sentenced in Case No. 17CRS034605 to between 14 and 26 months' imprisonment)].

The Defendant's claims of ineffective assistance with regards to sentencing are vague and conclusory, refuted by the record, and meritless. Accordingly, they are dismissed and denied.

### D. Appeal

The right to the effective assistance of counsel extends to direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.

The Defendant contends that counsel did not file a direct appeal on his behalf and dodged his phone calls, which required the Defendant had to file a Notice of Appeal himself. [Doc. 59 at 8]. The Defendant's arguments that counsel performed deficiently for failing to adequately communicate and file a Notice of Appeal for him are self-defeating because he admits that he filed a Notice of Appeal on his own behalf. The Defendant has not attempted to demonstrate prejudice, and therefore, his claims of ineffective assistance with regards to a Notice of Appeal are dismissed and denied. See Dyess, 730 F.3d at 359.

### IV. CONCLUSION

For the foregoing reasons, the Amended Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1. The Amended Motion to Vacate [Doc. 59] is **DISMISSED AND DENIED.**

15

2. The Clerk is instructed to terminate the Motion to Vacate [Doc. 60].

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a Defendant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a Defendant must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: July 31, 2024

Robert J. Conrad, Jr.
United States District Judge